## *In re* VINTSCHGER *et al,*

### *(Circuit Court, S. D. New York.* April 15, 1892.)

TARIFF ACT—SIMULATED TRADE-MARK—MANDAMUS.

    Certain merchandise, consisting of metal polish, was imported into the port of New York on the 15th of March, 1892. The collector of customs declined to admit the merchandise to entry, on the ground that, pursuant to the provisions of section 7 of the tariff act of October 1, 1890, he had received from the secretary of the treasury facsimiles of a certain trade-mark filed in the treasury department by "The Meyers Putz Pomade Company," which facsimiles were duly recorded at the New York customhouse pursuant to instructions contained in a circular of the treasury department dated October 31, 1890, and that said collector had decided that the trade-mark borne by the goods attempted to be entered simulated or copied the trade-mark so filed and recorded at the customhouse in New York. On an application to the circuit court for a *mandamus* to compel the collector to take evidence as to the validity of the trade-mark filed by the Myers Putz Pomade Company in Washington, and the right of the importers to use the trade-mark upon their goods, *held,* that the circuit court had no jurisdiction to grant a *mandamus,* and that the question whether the decision of the proper customs officers that any particular import was within the prohibition of the statute was reviewable by the courts, and, if so, in what way, was not before the court in this proceeding.

Application for *Mandamus.*

This was an order to show cause why a *mandamus* should not issue to compel the collector of the port of New York to take and hear the evidence and proofs of the applicants, composing the firm of Markt & Co., and to determine whether one E. Meyers, of the Meyers Putz Pomade Company, were the owners of an alleged trade-mark, and whether, notwithstanding the facsimile of the alleged trade-mark of the Meyers Putz Pomade Company on file in the office of said collector, entry should be refused of certain goods imported by the said firm of Markt & Co. It appeared from the affidavit upon which the order to show cause was granted that the applicants, composing the firm of Markt & Co., doing business in New York city, imported the merchandise in question, namely, a certain quantity of metal polish, called "Universal Metall Putz Pomade;" that on or about the 14th day of March, 1892, the firm of Markt & Co. attempted to enter the same at the customhouse in the city of New York, but that the collector of said port refused to allow the goods to be entered, upon the grounds that he, the said collector, had received from the secretary of the treasury a certificate to the effect that the Meyers Putz Pomade Company had, in accordance with section 7 of chapter 1241 of the laws of the United States of 1890, (the tariff act of October 1, 1890,) caused to be deposited with the department of the treasury a facsimile of a trade-mark which the said Meyers Putz Pomade Company claimed as domestic manufactures, and that he, the said collector, had neither the power nor the time to investigate the question whether or not the Meyers Putz Pomade Company were domestic manufacturers, or the rightful owners of the said trade-mark.

The affidavit of the said applicants for the *mandamus* further set forth that one E. Meyers, who had been succeeded by the Meyers Putz Pomade Company, was formerly the agent of the firm of Schmitt & Foerderer, the manufacturers of the goods in Germany, and as such agent,

and as long ago as 1886, imported goods into this country under the identical marks and trade-marks which he and the Meyers Putz Pomade Company now claimed were their property; further, that the Meyers Putz Pomade Company was a corporation incorporated under the laws of West Virginia, having its principal office at Boston, Mass., and that the trade-mark which the Meyers Putz Pomade Company claimed, was derived from one E. Meyers, who was formerly the agent of said firm of Schmitt & Foerderer, which latter firm had used such trade-mark long prior to its alleged adoption by the Meyers Putz Pomade Company. On the return of the order to show cause the affidavit of the collector of customs at New York was read, by which it appeared that on or about the 19th day of February, 1892, the deponent, as such collector, received from the treasury department at Washington a letter dated February 18, 1892, inclosing the two facsimiles of the trade-mark therein referred to of the Meyers Putz Pomade Company, which facsimiles were duly recorded at the New York customhouse February 23, 1892, pursuant to instructions contained in the circular of the treasury department dated October 31, 1890, (printed in Synopsis Decisions of the Treasury Department for 1890, No. 10,309;) that the merchandise attempted to be entered was invoiced from Wahlershausen-Cassel, Germany, as "metal polish," contained in small tin boxes, having on the top of each an inscription or trade-mark, which boxes were in condition to be put upon the market of this country and sold; that said merchandise was examined according to law by the appraiser of said port of New York, who, on the 23d day of March, 1892, made his official return thereof to deponent as such collector, stating therein, among other things, "trade-mark illegal;" that deponent, as such collector, thereupon, exercising due and proper care, decided that the articles of merchandise imported as above did copy or simulate the trade-mark of "The Meyers Putz Pomade Company," of which facsimiles were received from the treasury department, and recorded, and filed in the New York customhouse, as above set forth; and that such articles of merchandise should not be admitted to entry at the customhouse and port of New York.

Section 7 of the tariff act of October 1, 1890, above referred to, is as follows:

"Sec. 7. That on and after March first, eighteen hundred and ninety-one, no article of imported merchandise which shall copy or simulate the name or trade-mark of any domestic manufacture or manufacturer shall be admitted to entry at any customhouse of the United States. And, in order to aid the officers of the customs in enforcing this prohibition, any domestic manufacturer who has adopted trade-marks may require his name and residence and a description of his trade-marks to be recorded in books which shall be kept for that purpose in the department of the treasury, under such regulations as the secretary of the treasury shall prescribe, and may furnish to the department facsimiles of such trade-marks; and thereupon the secretary of the treasury shall cause one or more copies of the same to be transmitted to each collector or other proper officer of the customs."

On behalf of the applicants for the *mandamus* it was argued that repeated applications had been made for relief both to the collector of the

port and to the secretary of the treasury without effect, and that, unless the court interfered by *mandamus* to compel the collector to examine into the question of the legality of the alleged trade-mark filed in the treasury department at Washington, and the right as claimed by the importers to use the same as their own, the importers seemed to be without remedy, as their merchandise was deteriorating in value, and possession thereof was refused them by the collector. On behalf of the collector it was urged (1) that the circuit court of the United States had no authority or power to issue a writ of *mandamus* as an original and independent proceeding; the United States attorney citing, among other authorities, *Bath Co.* v. *Amy*, 13 Wall. 244; *McIntire* v. *Wood*, 7 Cranch, 504; *McClung* v. *Silliman*, 6 Wheat. 601. (2) That, even if the court had jurisdiction, *mandamus* would lie only where there is a refusal to perform a ministerial act involving no exercise of judgment or discretion; or where the officer refuses to decide, and the aggrieved party could have the decision of the officer reviewed by another tribunal; citing *Commissioner* v. *Whiteley*, 4 Wall. 522; *Decatur* v. *Paulding*, 14 Pet. 515. (3) That more cannot be required of a public officer by *mandamus* than the law has made it his duty to do; citing *Ex parte Rowland*, 104 U. S. 612.

*Goepel & Raegener*, for applicants.

*Edward Mitchell*, U. S. Atty., and *James T. Van Rensselaer*, Asst. U. S. Atty., for collector.

LACOMBE, Circuit Judge. Under the provisions of section 7 of the tariff act of October 1, 1890, the question whether a domestic manufacturer has adopted a name or trade-mark, and whether any articles of imported merchandise do copy or simulate such name or trade-mark, are to be determined, in the first instance, by the administrative officers to whom the execution of the tariff laws is intrusted. The provision of the same section that a record shall be kept in the treasury department, describing such trade-marks, does not make that record conclusive evidence of the fact that the person who "may require his name and residence and a description of his trade-marks to be recorded," is a domestic manufacturer, or has any trade-mark. The record book is, in the language of the statute, but an "aid" to the customs officers, and the prohibition is directed only against articles which copy or simulate the genuine trade-marks of *bona fide* domestic manufacturers. Whether the decision of the proper customs officers that any particular import is within the prohibition is reviewable in the courts, and, if so, in what way it may be presented for review, is not now before this court. This application is for a *mandamus* to compel the collector to examine into the facts, and decide whether entry should be refused or not, and it is abundantly settled by authority that the power to issue a writ of *mandamus* as an original and independent proceeding does not belong to the United States circuit courts. *Bath Co.* v. *Amy*, 13 Wall. 244.

Motion denied.